WHITLOCK CORDAGE CO. *v.* UNITED STATES (No. 2610)[1]

1. CONSTRUCTION, PARAGRAPH 372, TARIFF ACT OF 1922—"TEXTILE MACHINERY."
    The provision of paragraph 372, Tariff Act of 1922, for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for" was not intended to be limited in its operation to textile machinery of any particular kind, or to that which produced woven fabrics. It was intended to be sufficiently comprehensive to cover *all* textile machinery not otherwise specially provided for, and certainly includes machines which are used in the manufacture of textile materials. The same paragraph contains a provision for "knitting, braiding, lace braiding, and insulating machines and all other similar textile machinery." Obviously some of the machines thus denominated as "textile" do not produce woven fabrics.

2. ROPE-MAKING MACHINES—TEXTILE MACHINERY.
    Machines which manufacture textile fibres into yarns for making rope are classifiable as "all other textile machinery," under paragraph 372, Tariff Act of 1922. A machine which twists the yarns into strands and the strands into rope is not.

United States Court of Customs Appeals, March 27, 1926

APPEAL from Board of United States General Appraisers, G. A. 8966 (T. D. 40796)

[Modified.]

*John Giblon Duffy* for appellant.
*William W. Hoppin* and *Charles D. Lawrence,* Assistant Attorneys General (*John A. Kemp,* special attorney, of counsel), for the United States.

[Oral argument December 9, 1925, by Mr. Duffy and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is rope-making machinery, and consists of a "breaker card," a "third and finishing drawing frame," a "regulating gill spinning frame," a "24 spindle patented twister," and parts for them.

The breaker card and the regulating gill spinning frame were described in the invoice as preparing machinery and entered as "Machinery," not specially provided for. The drawing frame was

---

[1] T. D. 41490

described in the invoice as "textile machinery," and entered as "Machinery" not specially provided for. The 24 spindle patented twister was described in the invoice and entered as "textile machinery."

The merchandise was assessed for duty by the collector as textile machinery at 35 per centum ad valorem, under the provision for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for. * * * " contained in paragraph 372 of the Tariff Act of 1922, which reads as follows:

PAR. 372. Steam engines and steam locomotives, 15 per centum ad valorem; sewing machines, and parts thereof, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each, 30 per centum ad valorem; cash registers, and parts thereof, 25 per centum ad valorem; printing presses, not specially provided for, lawn mowers, and machine tools and parts of machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and typewriting machines, 30 per centum ad valorem; all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: *Provided*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

It was claimed by the importer in its protest that the imported merchandise was not textile machinery and was not dutiable as such, but was properly dutiable under the following provision of paragraph 372, *supra:* "all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem."

The trial court overruled the protest and the importer appealed.

One witness testified for the importer. He stated that he was assistant superintendent of the importing company; that the importer manufactured rope, ranging from $\frac{3}{16}$ of an inch to 6½ inches in diameter, of "Manila hemp, sisal, hemp, istle," and "Wisconsin hemp;" that the "hemp is taken from the bale as we received it from Mexico and is laid down on the apron of a breaker card, and is delivered on the other end of the card as an endless sliver and goes into cans. It goes through four card breakers passing from one to the other. It goes from there to the drawing frame, it goes through the first drawing frame, and from the first drawing frame it goes to the finishing frame;" that the drawing frame "simply" parallels the fibers; that the hemp comes out of the finishing drawing frame as a

sliver, and is then put through the spinning frame where it is spun into yarn; "the yarns are then put up in the former and the strand is formed, three strands being formed for rope, and from the former the three strands are put in a layer and it is put into a rope as a finished rope." He further testified that the function of the "24-spindle patented twister" was "to make up small strands in small sizes of rope," and that in the manufacture of rope the yarns are not woven nor interlaced. On cross-examination the attention of the witness was called to the 24-spindle twisting frame. In testifying as to its functions, he said: "This machine, patented twisting frame, takes the yarns as they are delivered by the roving or spinning frame and forms them into the strands which form one-third of the rope." He further testified on cross-examination as follows:

Q. Now, as a matter of fact all that the machinery does is to take the rough hemp, parallels the fibers and twists them?—A. Yes.

The Board of General Appraisers held that the provision in paragraph 372, *supra*, for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for," was intended to be sufficiently comprehensive to include all textile machinery, not otherwise specially provided for, and, in the absence of commercial proof to the contrary, includes within its terms such machinery as is "exclusively or chiefly used to operate, process, or otherwise manipulate and treat textile fibers or yarns."

It is claimed by counsel for the appellant that it is the ultimate product of the imported machinery rather than the material upon which it operates which determines its classification, and that the provision for "all other textile machinery," was intended to include only such machinery as is used in the production of textile fabrics.

The machinery in question is used in the manufacture of rope yarn and rope, and the materials used by the appellant consist of manila hemp, sisal, hemp, istle, and Wisconsin hemp. It is commonly known, however, that other textile fibers, both animal and vegetable, such as flax, cotton, jute, coir, wool, and camel hair, are used in the manufacture of rope, cords, and twine.

Rope as a noun is defined by Funk & Wagnalls New Standard Dictionary as follows:

A construction of wire or of twisted fibers, as of hemp, cotton, flax, or jute, so intertwined as to form a thick cord capable of sustaining a severe strain. Commonly rope consists of rope-yarns twisted into three strands that in turn are twisted together. * * * Technically, the distinction between a cord and a rope, other than of wire, is made at one inch circumference; in popular usage smaller sizes are often termed ropes.

The word textile is defined by the same authority as follows:

Textile. N. A woven fabric, or a material suitable for weaving; textile material.

Textile. Adj. 1. Of or pertaining to weaving or woven fabrics. 2. Such as may be woven; manufactured by weaving; as, wool is a textile fiber; cloth is a textile fabric.

From the testimony in the record it plainly appears that the purpose of processing textile fibers by means of the breaker card, drawing frame, and spinning frame is to produce yarn. The yarns so produced are twisted into strands, and the strands into rope by means of the machine, known as the "24 spindle patented twister."

There is nothing in the record to indicate that the yarn made by this machinery is not suitable for weaving, and from an examination of the exhibit in the case, we think it is suitable for such purposes. It is, therefore, textile material.

The Congress, in the provision under consideration, has not used the word textile in a limited or narrow sense. This conclusion is inevitable from a careful reading of the statute. The Congress has provided for "knitting, braiding, lace braiding, and insulating machines, and all other *similar textile machinery.* * * *" · (Italics ours.) Obviously, knitting machines do not produce *woven* fabrics Yet they are referred to in the statute as textile machinery.

Counsel for the appellant calls attention to the fact that the statute provides for embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, knitting, braiding, lace braiding, and insulating machines, and, with reference to such provisions, and to the testimony in the case, says: "It is made clear in his testimony that every one of the machines so mentioned produces a thing, fabric in its nature." From this premise it is argued that it was intended by the Congress to include within the provision for "all other textile machinery or parts thereof" only such machinery as *produced fabrics.* It is true that most of the machines enumerated in the provisions under consideration in this case produce fabrics. But there is nothing in the statute to indicate that the Congress intended to exclude from the operation of its provisions all textile machines which do not produce fabrics. The statute contains a provision for "embroidery machines." Surely it would not be contended by counsel for the appellant that the provision for embroidery machines was intended to be limited to such as produced fabrics.

The word embroidery is defined as follows:

Ornamental work done with the needle on cloth, canvas, leather, etc.; also, the art of producing such ornamentation, or the fabric ornamented.

The work may be done by hand or with machinery, and threads of cotton, silk, silver, gold, etc., may be used; but *embroidery is always work added to the completed fabric by means of a needle.* (Italics ours.)—Funk & Wagnalls New Standard Dictionary.

See also *Kayser & Co. (Inc.) et al.* v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367; *Kayser & Co. (Inc.) et al.* v. *Pevny et al.*, 13 Ct. Cust. Appls. 479, T. D. 41368.

It will be noted that the provision for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for," in paragraph 372, *supra*, immediately follows the provision for "knitting, braiding, lace braiding, and insulating machines, and all other *similar textile machinery* or parts thereof." (Italics ours.)

Obviously, the provision was not intended to be limited in its operation to textile machinery of any particular kind, or to that which produced woven fabrics. It was intended, we think, to be sufficiently comprehensive to cover *all* textile machinery not otherwise specially provided for, and certainly includes machines which are used in the manufacture of textile materials.

The "breaker card," the "third and finishing drawing frame," and the "regulating gill spinning frame" are used in the manufacture of yarn, which is a textile material, and, therefore, they, and the parts therefor, are included within the provision for all other textile machinery. The "24-spindle patented twister" is used in twisting the yarn into strands, and the strands into rope. Its function is to manufacture a textile material into a product which is not a textile, either within the strict definition of that term, or within the broader construction here placed upon the statute. Nor does it process or otherwise make textile materials available for textile uses. We are of opinion that such machinery is not textile machinery, and that it was not intended to be included within the provisions therefor.

The judgment is modified, being reversed in so far as it holds the "24-spindle patented twister" and the parts therefor dutiable as textile machinery, and is otherwise affirmed.

*Modified.*