PASSAIC WORSTED CO. ET AL. *v.* UNITED STATES (No. 3262[1])

United States Court of Customs and Patent Appeals, March 19, 1930

B. A. Levett for appellant.

Charles D. Lawrence, Assistant Attorney General (Hugo P. Geisler, special attorney, of counsel), for the United States.

[Oral argument February 14, 1930, by Mr. Levett and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Appellants imported at the port of New York several machines of three types—namely, wool openers, dessuinters, and dryers. These were classified by the collector, in each instance, under the provision for "all other textile machinery or parts thereof, not specially pro-

---

[1] T. D. 43916.

vided for," in paragraph 372 of the Tariff Act of 1922. The importers protested in each instance, claiming the goods to be dutiable under the provision for "all other machines or parts thereof," in the same paragraph. The court below overruled the protests and the importers have appealed.

The relevant portions of the paragraph in question are as follows:

PAR. 372. * * * knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *.

The evidence shows that the machines in question are used in woolen mills for the following purposes: The uncleansed fleeces are first run through the opener, by means of which the bunches of wool are torn apart; this material then passes through the dessuinter, where it is washed thoroughly; finally it passes through the dryer and comes out loose, clean, and dry, and ready for the subsequent operations. No changes have occurred in the wool except those just mentioned. Thereafter the wool, if being prepared for the manufacturer of textiles, is carded, goes through a backwashing machine, a cull box, a combing machine, and various other operations not important here. It is conceded that the function performed by the three machines involved here is no different, except in degree, from that performed by the wool farmer when he washes the fleeces on the backs of his sheep in a stream and permits them to dry in the sun.

The question arises whether such machines are textile machines. This question does not appear to be difficult, in view of what we have heretofore said on the subject. In *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T. D. 41490, we considered certain machines for the making of rope and which, although using textile fibers in their operations, we held not to be textile machines. In deciding the matter we said, in part, speaking through Hatfield, J.:

It will be noted that the provision for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for," in paragraph 372, *supra*, immediately follows the provision for "knitting, braiding, lace braiding, and insulating machines, and all other *similar textile machinery* or parts thereof." (Italics ours.)

Obviously, the provision was not intended to be limited in its operation to textile machinery of any particular kind, or to that which produced woven fabrics. It was intended, we think, to be sufficiently comprehensive to cover *all* textile machinery not otherwise specially provided for, and certainly includes machines which are used in the manufacture of textile materials.

We thus expressed the opinion that the phrase "all other textile machinery" includes machines which are used in the *manufacture* of textile materials.

If this be the test, and we think it is, are the machines imported here used in the *manufacture* of textile materials? Obviously, they are not. Ever since the creation of this court it has held, consistently, that the mere cleansing of an article, or "getting it by itself," is not a manufacturing process. This rule is so well understood that it requires no elaboration here. *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T. D. 31277; *United States* v. *Brown & Co.*, 10 Ct. Cust. Appls. 47, T. D. 38295; *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296; *United States* v. *Makaroff et al.*, 16 Ct. Cust. Appls. 531, T. D. 43263. Therefore, these machines are not used in the manufacture of textile materials, and, it follows, are not textile machinery within the meaning of the paragraph.

Counsel for the Government, in the court below, called several witnesses on the subject of commercial designation. The following excerpt from the testimony of John H. Senior is typical of all of this testimony.

Q. Did this machine come within the general description of textile machinery, that you told us about at the start, in the trade? * * * —A. Yes.

Q. Was there a definite, uniform, and general term used for all of this class of machinery that was well known in the trade prior to 1922, was there a general term used?—A. It was all known as textile machinery.

Q. And all of these machines that you manufactured were classified by the trade as textile machinery, is that right? * * * —A. They were. * * *

Q. Now, you say that there was a general term used for all of these machines—and that was what? * * * —A. Textile machinery.

Q. And that was known where, any particular locality?—A. This kind of machinery that we make is known as textile machinery all over the United States, and possibly all over the world, I think.

Q. Well, you said "I think."—A. Well, it is known as textile machinery in our catalogue, in which we show it.

Such testimony does not establish commercial designation, as we have had occasion many times to state. *United States* v. *Exstein Co.*, 16 Ct. Cust. Appls. 328, T. D. 43079; *United States* v. *Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092; *Hampton, jr.*, v. *United States*, 12 Ct. Cust. Appls. 490, T. D. 40695; *United States* v. *Schoemann & Mayer*, 17 C. C. P. A. —, T. D. 43778.

At the risk of unnecessary reiteration, we repeat a suggestion as to this kind of evidence frequently heretofore made by us. If, in the case at bar, it was sought to establish commercial designation of the imported machines as textile machinery, before attempting to do so it must be legally admitted that they have a commercial designation which differs from their common designation and that, under the common designation, they are not textile machinery. Otherwise, and if they are commonly known as textile machinery, no occasion for proof of commercial designation exists. Then, having admitted this necessary legal premise, the next inquiry must be: "By what name are these articles designated uniformly, generally, and definitely in the

trade wherever they are bought and sold?" If, to such an inquiry, the witness can respond that they are so designated as textile machinery, the evidence is competent and tends to prove commercial designation. A very good and substantial reason exists for so directing the inquiry. If the witness is uncertain in his statement, such uncertainty will readily appear on cross-examination. If, on the other hand, the witness is asked whether a certain article belongs within a certain class, the answer he gives will simply be his opinion, and the true facts may not be readily available on cross-examination. The rule of commercial designation is a wise one, but the rule is narrow and must be closely adhered to.

The judgment of the United States Customs Court is *reversed* and the cause *remanded* with directions to sustain the protest.