EDWARD JEFFERSON (INC.) *v.* UNITED STATES (No. 3288)[1]

United States Court of Customs and Patent Appeals, January 21, 1931

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

Oral argument December 11, 1930, by Mr. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The question in this appeal from the Customs Court, involving seven protest cases, is whether the merchandise is "textile machinery or parts thereof, finished or unfinished," provided for in one portion of paragraph 372 of the Tariff Act of 1922, or "all other machines, or parts thereof, finished or unfinished, not specially provided for," named in another part of the same paragraph. If the former, as was held by the collector, and by the Customs Court, when the latter overruled appellant's protest, the articles take duty at 35 per centum ad valorem; if the latter, as claimed by appellant, the rate is 30 per centum ad valorem.

There is no material dispute about the facts. The articles are "backwashing machines and parts thereof." The machines serve only to wash and dry wool slivers after the woolen material has been carded to sliver form.

The court below said:

It appears of record that these so-called backwashing machines are exclusively employed in washing and cleaning wool slivers in the course of their manufacture into yarn. The slivers are fed into the bowls of the machines and as they are passed along through the cylinders the wool is washed of all oily substances and comes out in a clean, dry condition. Many subsequent processes follow to bring the wool to the finished yarn.

Appellant insists that the classification of the instant merchandise is controlled by the holding of this court in *Passaic Worsted Co. et al. v. United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916, and cases therein cited, and it is pointed out that the judgment of the court below was rendered in this suit prior to our decision of the latter.

The merchandise involved in the *Passaic* case, *supra*, consisted of "wool openers, dessuinters, and dryers, used in tearing apart the fleeces of *raw* wool, washing, cleaning and drying it." (Italics ours.)

We there held, in an opinion by Presiding Judge Graham, that the function performed by the machines involved constitute a cleansing process of material in its raw stage and is not a textile manufacturing process. It was there said:

\* \* \* It is conceded that the function performed by the three machines involved here is no different, except in degree, from that performed by the wool farmer when he washes the fleeces on the backs of his sheep in a stream and permits them to dry in the sun.

Certain holdings were quoted from an opinion of this court, delivered by Judge Hatfield in *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T. D. 41490, and the opinion of Judge Graham then continued:

We thus expressed the opinion that the phrase "all other textile machinery" includes machines which are used in the *manufacture* of textile materials.

If this be the test, and we think it is, are the machines imported here used in the *manufacture* of textile materials? Obviously, they are not. Ever since the creation of this court it has held, consistently, that the mere cleansing of an article, or "getting it by itself," is not a manufacturing process. This rule is so well understood that it requires no elaboration here. *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T. D. 31277; *United States* v. *Brown & Co.*, 10 Ct. Cust. Appls. 47, T. D. 38295; *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296; *United States* v. *Makaroff et al.*, 16 Ct. Cust. Appls. 531, T. D. 43263. Therefore, these machines are not used in the manufacture of textile materials and, it follows, are not textile machinery within the meaning of the paragraph.

We adhere to the law as declared in the *Whitlock* and *Passaic* cases, *supra*, because it is sound, but obviously the function of the machines here involved differs from the functions performed by the machines, held not to be textile machines, involved in those cases.

Indeed, in the *Passaic* case, after describing the process through which the wool passed in the there involved machines, we said:

\* \* \* Thereafter the wool, if being prepared for the manufacture of textiles, is carded, *goes through a backwashing machine*, a cull box, a combing machine, and various other operations not important here. [Italics new here.]

The only testimony taken in the instant suit was that of Mr. Jefferson, the importer. Certain exhibits were filed consisting of three photographs, taken in different positions, of a machine, said to be similar to those at issue, and exhibits of slivers of wool, one of the latter representing the material immediately before it passes through the involved machines and one representing it in its condition immediately after passing through.

There seems to be no necessity of our reviewing the testimony in detail. It establishes the fact that in processing wool toward the textile stage there is (1) sorting or selecting fleeces—a hand operation; (2) breaking up the fleeces by machine; (3) washing or scouring by machine; (4) drying. When it has been advanced to this stage the wool "is a tangled mass, tangled and yet open. The fibers do

not lay parallel yet." This tangled mass is then introduced into the carding machines which is the first operation in "opening and paralleling the fibers." It emerges from the carding machine in the form of slivers.

At some point (just where or when the record does not clearly show) during the operations above detailed, oil is added "to make it work easier," and the purpose of the backwashing machines is to take out the oil which has thus been introduced. It is not simply for cleansing the wool of natural oil but for removing oil artificially injected to aid in the manipulation of the material.

It is not required that for all products the slivers shall go through the backwashing machines.

On cross-examination the witness testified:

Q. Why do they put it through a backwashing machine?—A. The finer the cards of wool to be made into, the finer counts of yarn used for fine knitting and weaving will go through that machine and wool that is to go into low count knitting yarn for making heavy sweaters and the like, you would not have to go through a machine like that.

We take it that the carding machine which produces the slivers is undoubtedly a textile machine, since it advances the material toward the finer yarns used for knitting or weaving. The witness testified that the "first operation following the backwashing is the gill box."

Q. And that is known as a textile machine?—A. Yes.

Such being the undisputed proof in the record it would seem most unreasonable not to classify these machines as textile machines.

While, as said in the *Passaic* case, *supra*, the court "has consistently held that the mere cleansing of an article, or 'getting it by itself,' is not a manufacturing process," obviously, the holdings along that line have gone no further than to so designate those cleansing and separating steps which are taken for the purpose of putting the raw material in decent and workable condition. The doctrine may not properly be extended to cover a step which, for actual manufacturing purposes, removes an ingredient previously injected, this injection being itself for a manufacturing purpose.

Our recent case of *United States* v. *Samuel Shapiro & Co.*, 18 C. C. P. A. (Customs) 165, T. D. 44374, referred to during the oral argument, is, obviously, not in point here. There is a certain degree of analogy between the instant case and that of *Jett & Co.* v. *United States*, 18 C. C. P. A. (Customs) 86, T. D. 44044, decided by us in an opinion by Judge Lenroot, May 12, 1930.

The judgment of the Customs Court is without error and same is *affirmed*.