UNITED STATES *v.* ASTEN HILL MFG. CO. (No. 4069) [1]

---

[1] T. D. 49243.

124

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *William Whynman*, special attorneys, of counsel), for the United States.

*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for appellee.

[Oral argument October 7, 1937, by Mr. Folks and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Importer, appellee, imported at the port of Philadelphia merchandise consisting of looms and parts of looms used in the weaving of fabric belts made from cotton, and asbestos fiber mixed with cotton. The importations were entered as textile machinery, or textile machine parts.

The Collector of Customs classified the said merchandise under paragraph 372, Tariff Act of 1930, as "all other textile machinery, finished or unfinished, not specially provided for" and assessed duty thereon at 40 per centum ad valorem.

The importer protested the said classification and assessment of duty by the collector, and claimed the merchandise to be dutiable at but 27½ per centum ad valorem under the provision for "all other machines, finished or unfinished, not specially provided for" in said paragraph 372.

The United States Customs Court, Second Division, sustained the protest, and from its judgment the United States has appealed to this court.

The pertinent provisions of said paragraph 372 follow:

\* \* \* knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; *all other textile machinery, finished or unfinished, not specially provided for*, 40 per centum ad valorem; \* \* \* *all other machines, finished or unfinished, not specially provided for*, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: \* \* \* [Italics except *Provided* ours.]

The record is not very clear as to the condition of the fabric belts as they leave the imported looms, but in this court it was stated that the belts when they leave the looms are completed articles, ready for use. This statement was not questioned, so we, like the trial court, must regard the belts as finished ones as they come from the looms, and not merely belting to be made into belts. Mr. Harold Newlin Hill, vice president of the importing company, upon being asked whether the belts came out in a continuous length stated: "It only comes out in such length as to the amount put on the spool on the back of the loom" and that this was predetermined before the machine was operated.

It is shown by the testimony of record that the belts made on the involved looms are from 60 inches to 274 inches wide and 70 feet to 180 yards in length; that they are used in paper-making machines to press the paper up against the steam-heated dryer.

The method of making fabric belts on the involved machinery, as shown by the testimony in this case, may be briefly stated as follows:

Cotton and asbestos fiber which has been mixed, run through a card, twisted and "wound on a large drum like a spool," is put on the back of the loom. It is then run through a harness into a reed; it then goes on a winding spool in front of the loom; "then you have to have yarn on your shuttles, on your stick, on your bobbin, in your shuttles"; the loom then weaves the fabric into a belt of varying size according to the specification. This belt is made of cotton on one side and "this asbestos mixed with the yarn on the other."

The looms involved are each about 20 to 30 feet wide, 15 feet long, and 7 feet high and weigh more than a ton.

The trial court held that since the product of the involved looms was a complete article, with a distinctive name and use, and not merely textile material, although made therefrom, the machines were not within the provision of said paragraph 372 for textile machinery or parts thereof, and cited *Whitlock Cordage Co.* v. *United States,* 13 Ct. Cust. Appls. 656, T. D. 41490, and other less pertinent decisions of this court.

The contention of the importer is that, under the decisions of this court, and especially the case of *Whitlock Cordage Co.* v. *United States, supra,* the looms and parts of looms involved here, although they weave a textile thread into what must be conceded to be a textile article, cannot be regarded as textile machinery for the reason that the resulting product is a completed article which the importer contends is not a textile but part of a paper-making machine.

In the *Whitlock Cordage Co.* case, *supra,* this court emphasized the fact that paragraph 372, *supra,* was a comprehensive one and was intended to include all machines which "are used in the manufacture of textile materials" and that it was not confined to a machine which,

of itself, produced a woven fabric. We quote the following from the *Whitlock Cordage Co.* case, *supra:*

\* \* \* It is true that most of the machines enumerated in the provisions under consideration in this case produce fabrics. But there is nothing in the statute to indicate that the Congress intended to exclude from the operation of its provisions all textile machines which do not produce fabrics. The statute contains a provision for "embroidery machines." Surely it would not be contended by counsel for the appellant that the provision for embroidery machines was intended to be limited to such as produced fabrics.

\* \* \* \* \* \* \*

It will be noted that the provision for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for," in paragraph 372, *supra,* immediately follows the provision for "knitting, braiding, lace braiding, and insulating machines, and all other *similar textile machinery* or parts thereof." (Italics ours.)

Obviously, the provision was not intended to be limited in its operation to textile machinery of any particular kind, or to that which produced woven fabrics. It was intended, we think, to be sufficiently comprehensive to cover *all* textile machinery not otherwise specially provided for, and certainly includes machines which are used in the manufacture of textile materials.

The language used in the *Whitlock Cordage Co.* case, *supra,* upon which appellee relies is the following:

\* \* \* The "24-spindle patented twister" is used in twisting the yarn into strands, and the strands into rope. Its function is to manufacture a textile material into a product which is not a textile, either within the strict definition of that term, or within the broader construction here placed upon the statute. Nor does it process or otherwise make textile materials available for textile uses. We are of opinion that such machinery is not textile machinery, and that it was not intended to be included within the provisions therefor.

The case at bar is not on all fours with the *Whitlock Cordage Co.* case, *supra.* In that case there was involved, among other articles, a "24-spindle patented twister" which twisted the yarn (a textile) into strands (not a textile) and the strands into rope. Making the yarn was a textile operation. Twisting the yarn into strands and the strands into rope was not a textile operation but a rope-making operation. It is true that the twister twisted a textile thread, but as is stated in the opinion, it did not process or otherwise make available textile material for textile purposes nor did it produce a textile. In the instant case, the looms, as far as we have been able to ascertain, are not different from any ordinary weaving loom except that they are especially adapted in size, shape and structure to meet the requirements in making very heavy fabric belts. The looms contain warp means, harnesses, shuttles, shuttle boxes and all the other essential features of an ordinary loom, and, obviously, weaving is performed in making the fabric belts.

There could be no possible question in this case if belting rather than belts came from the looms because the product of the looms is

entirely woven. As we understand it, the importer's whole contention is based upon the premise that a finished belt is not a textile. Many definitions of the term "textile" have been examined. Most of them define the term as meaning a woven fabric or a material suitable for weaving into a textile fabric. The word "textile" is derived from the Latin "textilis"—"texere," meaning to weave. Webster's New International Dictionary, however, defines the noun "textile" as "That which is, or may be woven; a woven fabric or a material for weaving." If definitions alone were to be relied upon, it would be more important to determine the meaning of the adjective "textile" because in the case at bar the meaning of the term "textile machinery" is involved. The adjective "textile" is, in Webster's New International Dictionary, defined as "Pertaining to weaving or to woven fabrics; as, *textile* articles, *textile* machinery."

Concerning textile belting, Volume 3 of the 14th edition of the Encyclopaedia Britannica, at page 390, recites the following:

This is made by weaving in a loom or building up a belt with layers of canvas stitched together. * * * Textile belts are used more for conveyor service than for the transmission of power.

It is apparent, however, that textile threads may be manufactured into articles which, under any of the definitions, would not be regarded as textiles. But surely, an article made entirely of textile threads upon a loom by the ordinary process of weaving does not lose its textile character merely because it is a finished article and not a textile material or fabric for further manufacture into such an article. To sustain the contention of the importer and the position of the trial court, in our view, would logically lead to a holding that a loom that wove a finished blanket was not a textile machine because the product of the machine had ceased to be a textile but was a finished article. Under that contention a loom which wove blankets in long lengths to be cut at a mark indicated would not be a textile machine, but one that wove blanketing would be. We cannot believe that Congress in its unusually comprehensive provision for textile machinery intended the language used to have such a narrow application.

On the contrary, as was pointed out in the *Whitlock Cordage Co.* case, *supra,* and other cases of this court not necessary to discuss here, the context of the provision would indicate that the term "textile machinery" was intended to be very broad and comprehensive. Knitting, braiding, lace-braiding, and insulating machines, named in the paragraph, are therein characterized as textile machinery. If knitting machinery had not been specifically included, importer's counsel might argue in another case as logically as they argue in the instant case that finished stockings produced on a knitting machine were not textiles, and therefore that a knitting machine was not a

textile machine. An insulating machine produces a braided textile structure around electrical wiring. Whether the insulated product is or is not a textile in the narrower sense is not important since Congress styled the machine which produced it a textile machine.

We are of the opinion that the imported looms and parts thereof were properly classified under paragraph 372, Tariff Act of 1930, as textile machinery, and the judgment of the United States Customs Court is *reversed*.