(C. D. 1408)

DEAN & SHERK COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 29, 1952)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: An importation described on the invoices as "Baines Weild Automatic Spooling Machine" was classified by the collector of customs as machines, not specially provided for, and duty was assessed thereon at the rate of 27½ per centum ad valorem as provided in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372). Plaintiff claims that duty should have been assessed at the rate of 25 per centum ad valorem pursuant to the provision for textile machinery, not specially provided for, in said paragraph 372, as modified by the trade agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, effective January 1, 1939.

The provisions of the statute directly involved read as follows:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem * * *.

Paragraph 372, as modified, *supra*:

Textile machinery, finished or unfinished, not specially provided for, and not provided for heretofore in any item numbered 372 in this schedule (except worsted combs, machinery for making synthetic textile filaments, bands, strips, or sheets, looms, or bleaching, printing, dyeing, and finishing machinery, and not including any article of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any trade agreement heretofore concluded under section 350, Tariff Act of 1930, as amended)_____25% ad val.

The sole question before us for determination is whether or not the importation is textile machinery within the meaning of said paragraph 372, as modified. The only witness in the case, H. D. McBrayer, who was examined before a notary public in Lawrenceburg, Ky., pursuant to a commission to take depositions, testified that he has been associated with Dean & Sherk Company, Inc., plaintiff herein, for over 22 years and has been assistant secretary and assistant treasurer of that company for approximately 15 years; that the plaintiff company manufactures industrial sewing threads and that he is personally familiar with the machines here in controversy which are

being used by plaintiff company in its mill in Lawrenceburg, Ky.; that they are spooling machines "used for winding sewing thread on small wooden spools both for use in industry and in the home," although this quoted statement was qualified in his later testimony, as will appear *infra*. He further testified that "This machine is not connected to spinning machinery and therefore does not make spinning and spooling a continuous operation"; that "Many types or sizes of thread are spooled on this machine. Sizes as coarse as 3's to sizes as fine as 100's in various plies—such as 2 ply, 3 ply and 4 ply. The size of the spool and the size of the thread govern the amount of yardage of thread that is wound on a spool. At the present about six sizes of wooden spools are used. * * * This machine winds thread on small double end wooden spools only and the size of the spool varies so as to hold 100 yards, 200 yards or 500 yards of thread. * * * This spooling machine winds thread that is used both in the home and in factories."

When asked whether there was a difference between machines used for winding thread or yarn for household use and those for winding thread or yarn for industrial use, the witness replied: "This machine winds principally household thread which is put up on small double head spools containing small yardages (50 yards, 100 yards, etc.) of thread, whereas almost all industrial thread is wound on cones, tubes or single head spools that will hold 4,800 yards, 6,000 yards, 9,600 yards and other large yardages."

The question to be determined, therefore, is whether the imported machine, which the witness has specifically stated is principally used for winding "household thread" on small double-head spools containing relatively small yardages, is textile machinery within the purview of paragraph 372, as modified, *supra*.

Plaintiff in support of its contention seems to rely upon the authority of *United States* v. *American Textile Engineering, Inc.*, 26 C. C. P. A. (Customs) 48, T. D. 49597. It appears from the opinion of the court in that case that a so-called hygrolit machine was under consideration. In describing it, the court observed: "It is comparatively large, and apparently acquires its name from the fact, as stated in the brief of counsel for appellee, 'that its main use is to spray a chemical liquid called Hygrolit over materials or articles caused to pass beneath a mechanism forming part of the machine, and operating to spray the liquid evenly over the material or articles carried beneath it.'" The machine and its operation were further described as follows: "The yarn is brought to the machine already wound on cops or tubes * * * in duffel-boxes, and then put into the machine through a feeding arrangement * * * consisting of a hoist, which feeds the yarn into a steam chamber. There it undergoes a very short steaming process * * *. The yarn then drops down onto an endless moving platform or carrier which brings it under the spray."

The appellate court referred to an earlier decision in which it held that certain machines used for tearing apart fleeces of wool and for washing and drying the wool were not textile machines and, hence, not dutiable as textile machinery (*Passaic Worsted Co. et al.* v. *United States,* 17 C. C. P. A. (Customs) 459, T. D. 43916), which latter case, after quoting from a still earlier case (*Whitlock Cordage Co.* v. *United States,* 13 Ct. Cust. Appls. 656, T. D. 41490), said:

> * * * that the phrase "all other textile machinery" includes machines which are used in the *manufacture* of textile materials.
>
> If this be the test, and we think it is, are the machines imported here used in the *manufacture* of textile materials? Obviously, they are not. Ever since the creation of this court it has held, consistently, that the mere cleansing of an article, or "getting it by itself," is not a manufacturing process. This rule is so well understood that it requires no elaboration here. [Italics quoted.]

The appellate court then pointed out that the decision in the *Passaic Worsted* case, *supra,* was followed and approved in *Jett & Co.* v. *United States,* 18 C. C. P. A. (Customs) 86, T. D. 44044, and *Edward Jefferson (Inc.)* v. *United States,* 18 C. C. P. A. (Customs) 322, T. D. 44583, and stated further that it was held in the *Jett* case, *supra,* "that machines which were 'integral parts of an installation which treats raw material, cotton linters, through various stages to produce a yarn used in the production of textiles,' were dutiable as textile machinery."

The appellate court also stated that in the *Edward Jefferson* case, *supra,* it was held "that certain 'backwashing machines and parts thereof,' used to wash and dry wool slivers (the purpose of the washing being to remove an 'ingredient previously injected, this injection being itself for a manufacturing purpose'), were dutiable as 'textile machinery or parts thereof'" and went on to say:

> It may be that the language used in the *Passaic Worsted Co. et al.* case, *supra,* restated and followed in the *Jett & Co.* and *Edward Jefferson (Inc.)* cases, *supra,* is open to the interpretation placed upon it by counsel for appellee. However, as is apparent from our decision in the latter case, this court, in stating in those decisions that a textile machine was one used in the manufacture of textile materials, did not mean to be understood as holding that *only such machines as actually converted a material into a new material or article having a new name, character, or use* were intended by the Congress to be included within the statutory provisions for all other textile machinery.
>
> It may require more than one manufacturing process to convert a textile material into a new textile material having a new name, character, or use. Indeed, it appears from the Summary of Tariff Information, 1929, Vol. 1, pp. 823–835 (prepared by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives), that many machines referred to therein as textile machinery, such as "machines for winding both raw silk and spun silk, as well as rayon, into various forms, bobbings, cops, skeins, 'beams' and there are other shapes for dyeing or weaving in the loom," have nothing whatsoever to do with changing the character of the material on which they operate. [Italics quoted.]

In its conclusion in the *American Textile Engineering, Inc.*, case, *supra*, the court stated as follows:

However, it appears from the record in the instant case that it is necessary to subject some yarns to the hygrolitic process, or one somewhat similar, to prepare them for use in knitting or weaving textile materials. The hygrolitic process actually changes the character of the yarn; gives it elasticity; strengthens it; and lessens its tendency to kink by "setting the twist."

Surely, a machine which performs such functions and produces such results on a textile material was intended by the Congress to be included in the provision for "textile machinery" contained in paragraph 372, *supra*.

In a more recent case (*Graemiger Bros., Inc.* v. *United States*, 12 Cust. Ct. 48, C. D. 829) in which a scallop-cutting machine, used to cut two sides of handkerchiefs in the piece along the embroidered and scalloped edges thereof, was held not to be textile machinery. In arriving at that conclusion, this court stated:

Fairly summarized, the judicial authorities would seem to include within the term textile machinery (1) mechanisms which produce textile fibers, yarns, materials, or articles; (2) devices which improve such fibers, yarns, or materials *per se;* and (3) machines which perform any step in the process of producing a textile material or textile article, whether or not the step itself is a manufacturing operation. * * *

Applying the reasoning of the cases above considered, we are clearly of the opinion that the machine in controversy is not within the scope and meaning of the term "textile machinery" as it appears in the statute, as modified.

Plaintiff in its brief admits that "On a somewhat similar record certain spooling machines were held not to be textile machines in *Milton Snedeker Corp.* v. *United States* (64 Treas. Dec. 855; Abstract 25034)," but did not definitely "express the reason for the conclusion * * *."

Although the *Snedeker* case, *supra*, was submitted by the parties thereto on an agreed statement of facts, it appears that the decision of the court therein is in harmony with subsequent decisions of this and the appellate court, as above set forth, as to what apparatus is encompassed by the term "textile machinery." So far as we are informed, the decision in the *Snedeker* case as to spooling machines of the type here in controversy, which was promulgated in 1933, has been the established law since that time, and we see no reason for departing from it upon the record in the present case.

In our opinion, based upon the facts before us and the principles outlined in the leading authorities above discussed, a machine that merely winds thread upon double-end spools for household use does not come within the class of "textile machinery" provided for in paragraph 372, as modified, *supra*.

The protest is overruled in all respects and judgment will be entered accordingly.