TEXTILE PRINTING & FINISHING CO., INC. *v.* UNITED STATES
(No. 5074)*

*C.A.D. 789.

United States Court of Customs and Patent Appeals,
January 15, 1962

*Jordan & Klingaman* (*J.L. Klingaman*, of counsel) for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

[Oral argument November 15, 1961, by Mr. Klingaman and Mr. Welsh]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, C.D. 2231, overruling the importer's protest and sustaining the classification of a machine designed for the screen printing of cloth as textile machinery under paragraph 372 of the Tariff Act of 1930. Appellant contends that the imported machine should be classified as an article "having as an essential feature an electrical element or device" under paragraph 353 of the act.

Paragraph 372 of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, so far as pertinent, reads:

> Textile machinery, finished or unfinished, not specially provided for * * *
>
> .*       *       *       *       *       *       *
>
> Bleaching, printing, dyeing, or finishing_____ 20% ad val.

Paragraph 353 of the Tariff Act of 1930 as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, reads in relevant part:

> Articles having as an essential feature an electrical element or device, such as electric motors, * * *, wholly or in chief value of metal, and not specially provided for:
>
> ¡*       *       *       *       *       *       *
>
> Other * * *_____ 13¾% ad val.

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d)) Title 28, United States Code.

The imported machine was custom-built to the user's specifications and is intended to print designs in eight different colors on woven cloth by a screen printing process. A 500-foot strip of cloth, 30 to 60 inches in width and in the form of a roll, is placed at one end of the machine and is gradually drawn by a conveyor belt through the machine. At predetermined time intervals, the cloth is stopped and a "screen" is lowered over a portion of the cloth. This "screen" comprises a piece of thin Dacron cloth, portions of which have been made impermeable to the printing inks. Ink is wiped back and forth over this screen by means of a squeegee thereby forcing ink through the permeable portions of the screen onto the cloth below. The screen is then raised and the cloth strip advanced to bring an unprinted area under the first screen and to bring the printed area under a second screen. The second screen and the six which follow it are each intended to print a part of the pattern in a different color on the same area of cloth. The conveyor belt, screens, and squeegees are moved by a plurality of electric motors and the sequence of operations is automatic.

According to a witness, the printed cloth as it comes from the machine is not ready for use in the manufacture of various textile items. The witness stated:

It must be steamed for an hour, acid-aged or flash-aged, as it is termed, to fix the dyes. Then, after the dyes are fixed or the inks have been dried, then they go to a washing operation which then causes the material to become distorted and it loses its shape, which requires a finish to be put back into it and then stretched back both ways, the length and width, to a finish acceptable to the trade. As the material is printed, it can't be used by the trade.

It appears that the imported machine does not perform these additional finishing operations.

Textile material printed by the machine and finished is stated to be used for the manufacture of dresses, bathing suits, flags, table covers, handkerchiefs, and upholstery material.

The sole question before this court is whether the imported machinery is "textile machinery" in the tariff sense.

The Customs Court was of the opinion that appellant's two witnesses and the exhibits in evidence [2] corroborated rather than negated the action of the collector in classifying the machine as textile printing machinery under paragraph 372.

The Customs Court also stated:

Granting arguendo, without deciding, that the imported screen printing machine in addition to being textile manufacturing machinery in said paragraph 372, as modified, supra, is also within the purview of the provision for articles

---

[2] One exhibit is an advertising folder distributed by the Swiss manufacturer of the machine. The other exhibit is a copy of the purchase agreement as to the imported machine between the importer and the manufacturer. This agreement sets forth the specifications as to construction and performance of the machine.

having as an essential feature an electrical element or device in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*, the provision for textile manufacturing machinery in said paragraph 372 would prevail on the principle of relative specificity. In the case of *Julius Forstmann & Co.* v. *United States*, 28 C.C.P.A. (Customs) 222, C.A.D. 149, our appellate court, when confronted with this question of law, relied upon the rule of construction that a classification by use prevails over a general classification and even an *eo nomine* designation, in the absence of clear congressional intent to the contrary. * * *

Appellant urges that if the imported machine "is not within the common meaning of the term 'textile machinery', then no trade agreement changing the rate of duty on 'textile machinery' can affect its classification."[3] If by this contention appellant means that a trade agreement, here GATT, could not classify textile printing machinery under paragraph 372 unless Congress intended such a classification, we would agree. However, we are not persuaded that Congress did intend to omit machinery for printing textiles from the textile machinery provisions of paragraph 372. This paragraph in its original form in the Tariff Act of 1930 reads in relevant part as follows:

Par. 372.

* * * printing machinery (except for textiles), * * * 25 per centum ad valorem; * * * embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * *

In this paragraph, the parenthetical phrase "except for textiles" after "printing machinery" was added by Senate Amendment No. 333, concerning which it is stated:[4]

* * * The Senate amendment reduces the rate to 25 per cent ad valorem; rewrites the House language so as to read "printing machinery (except for textiles)"; * * * and the House recedes.

In the Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667), page 221 (1930), compiled by the U.S. Tariff Commission as a supplement to Summary of Tariff Information, Vol. I, page 810 (1929), it is stated concerning Senate Amendment No. 333:

The exclusion of machinery for printing textiles avoids conflict in classification with the provisions for textile machinery. * * *

Both of these items were before Congress at the time the Tariff Act of 1930 was passed. As was held in *United States* v. *J. Eisenberg, Inc.*, 43 CCPA 105, C.A.D. 616, ▮ it is well settled that such information

---

[3] Appellant's Brief.

[4] Statement of the Managers on the Part of the House, Conference Report, Tariff Bill of 1930, S. Doc. No. 138, 71st Cong., 2d Sess. 62 (1930).

is recognized by this court as authoritative for the purpose of resolving questions relating to the meaning and scope of terms which appear in the various tariff acts, and determining the intent of Congress.

We believe that this legislative history indicates an intent of Congress to include machinery for printing textiles under the provision for "all other textile machinery" in paragraph 372.

Appellant also urges that "machines which operate on woven fabrics are not textile machines." [5] We think the intent of Congress was to the contrary. Again we refer to the Summary of Tariff Information, Vol. I (1929), cited *supra*. Starting at p. 805 thereof, paragraph 372 is discussed and "Textile Machinery" is discussed on pp. 814–835. At p. 831 under the heading "Looms and Finishing Machines," it is stated:

\* \* \* The equipment discussed here includes that for weaving fabrics from spun yarn, and for finishing the fabric for marketing. \* \* \* After weaving, the cloth is put through various processes to give the finish and appearance desired, these processes varying from rather simple operations to those which completely change the character of the fabric. \* \* \* The number of these machines performing the finishing operations is great, owing to the variety of materials used and the great variety of finishes desired, as well as to variations in the size of fabric. \* \* \*

Moreover, we have considered many of the cases which have come before this and our predecessor court concerning textile machinery, and we have found none which support either of appellant's contentions.

In *United States* v. *Asten Hill Mfg. Co.*, 25 CCPA 123, T.D. 49243, it was stated, and we agree:

\* \* \* the context of the provision would indicate that the term "textile machinery" was intended to be very broad and comprehensive. \* \* \*

In *Whitlock Cordage Co.* v. *United States*, 13 Ct. Cust. Appls. 656, T.D. 41490, in construing paragraph 372 of the Tariff Act of 1922, it was stated:

\* \* \* it is argued that it was intended by the Congress to include within the provision for "all other textile machinery or parts thereof" only such machinery as *produced fabrics*. It is true that most of the machines enumerated in the provisions under consideration in this case produce fabrics. But there is nothing in the statute to indicate that the Congress intended to exclude from the operation of its provisions all textile machines which do not produce fabrics. The statute contains a provision for "embroidery machines." Surely it would not be contended by counsel for the appellant that the provision for embroidery machines was intended to be limited to such as produced fabrics.

In *United States* v. *Schenkers, Inc.*, 17 CCPA 231, T.D. 43669, the imported merchandise consisted of unengraved copper rollers intended when finished to be used for printing on cloth. It was held that these

---

[5] Appellant's Brief.

were properly classified under paragraph 372 of the Tariff Act of 1922 as unfinished parts of textile machinery. Although in *United States* v. *Sussex Print Works*, 17 CCPA 257, T.D. 43686, this court held that *finished* printing rollers for use in printing textile were properly classifiable under paragraph 396 of the Tariff Act of 1922, it again held that *unfinished* rollers were within the purview of "all textile machinery or parts thereof finished or *unfinished* not specifically provided for" in paragraph 372 of the Tariff Act of 1922. [Emphasis ours.]

The other cases cited by appellant are distinguishable because of different factual situations.

Appellant leans heavily upon a case decided by the U.S. Customs Court, namely, *Graemiger Bros., Inc.* v. *United States*, 12 Cust. Ct. 48. This case involved a scallop-cutting machine which was held not to be a textile machine. The decision was based on the fact that the machine operated on finished textile material. On examination, we find that this decision does not support appellant's position for two reasons. First, until the design is printed on the textile material by the machine at bar, the material is not finished textile material. In fact, many operations must be performed after the printing before this material can be considered finished as has been heretofore noted. Second, the Customs Court in the *Graemiger* case cited two of its own opinions which demonstrate that appellant's interpretation of the *Graemiger* opinion is erroneous.. In *Suter* v. *United States*, 65 Treas. Dec. 1408, Abstract 27551, the Customs Court held a cloth pressing machine whose function was to impart a sheen to the *cloth* was classifiable as textile machinery, and in *Southgate* v. *United States*, 55 Treas. Dec. 492, T.D. 43280, that court in holding that a complete dyeing plant for dyeing raw cotton was dutiable as a textile machine, stated:

As we construe paragraph 372 and the various provisions therein for textile machines and machinery, the residuary provisions for "all other textile machinery or parts thereof" is, and. was evidently intended to be, exhaustive in scope and embracive of every kind and variety of textile machine not elsewhere specifically mentioned or specially provided for, the single determinative test of classification thereunder being that the machine be exclusively or chiefly employed to operate, process, manipulate, or otherwise treat textile fibers, yarns, or *fabrics*. It is a provision predicated solely upon the use of the machines or machinery. [Emphasis ours.]

Appellant has inferred that, in any event, since the machine in issue is operated by electric motors, its correct classification would be under paragraph 353 because of the principle of relative specificity. We disagree with this contention also. We believe paragraph 372 is more specific than 353.

For the foregoing reasons, we *affirm* the judgment of the Customs Court.