MAYER & CO. ET AL. *v.* UNITED STATES (No. 2455) [1]

1. CONSTRUCTION, PARAGRAPH 1433, TARIFF ACT OF 1922—GLOVES " EMBROID-
    ERED OR EMBELLISHED"—"PARIS POINTS"—"DRAWN POINTS."
   The word "embellish" means to make beautiful or elegant, to beautify or adorn.   It therefore signifies the addition to an article of that which is not necessary for its proper completion or usefulness and the creation of a commodity which is recognized by people in general as something more than plain. In *United States* v. *Grass Bros.*, 13 Ct. Cust. Appls. 33, T. D. 40866, it was said: "If the stitching on the back of the glove is primarily for the purpose of strengthening the glove or to prevent it from stretching or for a useful purpose other than ornamentation, it should not be regarded as embroidery or embellishment."   Women's gloves stitched on the back in the fashion known as "Paris points" or "drawn points"—the simplest and plainest of such effects—the stitching being only for the purpose of shaping and strengthening them and not showing any design, figure, or pattern in needlework, are neither embroidered nor embellished under paragraph 1433, Tariff Act of 1922.

[1] T. D. 41321.

United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, Abstract 47561 and
G. A. 8829 (T. D. 40307)

[Affirmed in part and reversed in part.]

*William W. Hoppin*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument October 9, 1925, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

SMITH, Judge, delivered the opinion of the court:

Women's leather gloves imported at the port of New York were classified by the collector of customs as women's gloves embroidered or embellished. They were therefore assessed for duty at $4.40 per dozen pairs under that part of paragraph 1433 of the Tariff Act of 1922 which reads as follows:

PAR. 1433. * * * women's and children's gloves not over twelve inches in length, $4 per dozen pairs; for each inch in length in excess thereof, 50 cents per dozen pairs: *Provided*, That, in addition thereto, *on all of the foregoing* there shall be paid the following cumulative duties: * * * *when embroidered or embellished, 40 cents per dozen pairs.*

The importers protested that the gloves were not embroidered or embellished and that therefore they were not subject to the additional duty of 40 cents per dozen pairs imposed by the collector.

The board sustained the protest except as to item 824, represented by Exhibit 5, and the Government appealed.

The items involved in the appeal are designated by the invoice Nos. 853, 852, 614, 851, 933 and are represented by Exhibits 1, 2, 3, 4, 6, and 7. Counsel for the importers in his brief and on the oral argument admitted that the item represented by Exhibit 6 was embroidered. Therefore, as to that item, the protest should have been overruled.

Exhibits 1, 2, 4, and 7 are stitched on the back by a stitching machine in such a way as to draw the leather with a plain ordinary stitch into three separate groups of corded or raised leather effects, the spaces between groups being wider at the base of the fingers of the glove than at that part of the glove nearer the wrist. The groups so spaced were known to some of the trade witnesses as Paris points and to others as drawn points. On Exhibit 3 there are three single cords produced by creasing the leather and overstitching the cords. The overstitching of the cords on the back of Exhibit 3 is exactly the same stitching as that which is used on the seams of the fingers of Exhibits 1, 4, and 7. The seams of the fingers of Exhibit 2 are stitched, but not overstitched. The cords on Exhibit 7 are not

overstitched, but three of them are a bit more pronounced than the cords or raises on Exhibits 1, 2, and 4.

The trade witnesses on behalf of the importers were agreed that they handled and knew of no plainer gloves or backs than those represented by Exhibits 1, 2, 3, and 4. Indeed, they were certain that they never saw a lady's glove without stitching on the back. Importers' witness Mayer testified that the making of the Paris or drawn point had no purpose other than that of drawing the leather together so as to diminish the leather surface next to the hand, thereby producing a better shaped and a better fitting glove. Mayer said that a lady might as well wear a bag on her hand as to put on a glove without stitching on the back. He admitted that there was less stitching on the cords of Exhibit 3 than there was on Exhibits 1, 2, 4, and 7, but he testified very positively that the extra stitching on the Paris or drawn point would cost only a few cents a dozen more than the overstitching of the three cords on the back of Exhibit 3. He insisted that a glove when cut out has no more shape than a bag with four fingers and a thumb and that a glove without stitching would not be merchantable.

The cords on Exhibits 1, 2, 4, and 7 are not overstitched, and an examination of those exhibits makes it apparent that the stitching between the several cords on the backs thereof was necessary in order to prevent the flattening of the cords. The overstitching of the cords on the back of Exhibit 3 holds fast the cords and renders unnecessary the side stitching which appears on Exhibits 1, 2, 4, and 7. In fact, Mayer testified that further stitching about the over-stitched cord of Exhibit 3 would accomplish no useful purpose.

The testimony and the illustrative samples of ornamented and embroidered gloves introduced in evidence on behalf of the importers establish to a certainty not only that admittedly ornamented or embroidered gloves differ radically from Exhibits 1, 2, 3, 4, and 7, but *that the ornamentation and raised effects on the backs of such embroidered or ornamented gloves are not produced by creasing the leather, but by the threads of the stitches.*

The testimony introduced by the Government for the purpose of showing that gloves such as Exhibits 1, 2, 3, 4, and 7 are embroidered is not convincing.

James S. Ireland, a glove manufacturer, and a witness for the Government, testified that importers' Exhibit No. 1 was a " 16-button glace embroidered overseam sewn *Paris point embroidery;*" that the Paris point was put on gloves to decorate them, and that he had never heard that it was used for the purpose of shaping the glove; that if the glove was not cut properly the cords on the back would throw the glove out of line; *that the only perfectly plain glove of which he was aware was a working glove; that he had never seen a lady's dress*

*glove that was perfectly plain on the back;* that some men's gloves such as golf or polo gloves have plain backs; that Paris point embroidery gloves had a cord with one or more rows of stitching around it; that he had seen a plain cord effect without any stitching around it whatever and *that such cord effect* was *called a Brosser embroidery.* The witness identified illustrative Exhibit "A" as such a Brosser embroidery, and it may be said with confidence that the ornamental raised silk thread effects on the back of that exhibit were wholly different from the leather cords on the back of the exhibits in this case.    The back of Exhibit "A" is ornamented with three wavy lines of white silk cord, through which passes a visible line of light brown stitching.    The raised effect so evolved is beyond question ornamental and was produced by the white and light brown threads of the stitches and not by creasing the leather.    Ireland was positive in his statement that he made no ladies' *dress* gloves and knew of the sale of no ladies' dress gloves having a less decoration on the back than that which appeared on illustrative Exhibit "A."    Later on in his testimony the witness stated that there might be plainer gloves than those with the Brosser embroidery.

Harry J. Louis, engaged in the business of selling gloves for the Bachner, Moses Louis Co., testified that Exhibit 1 was sold in the trade as a 16-button overseam glace.    Subsequently he described Exhibit 1 as a 16-button overseam glace Paris point embroidered. He stated that the phrase "Paris point embroidered" referred to the embroidery or embellishment on the glove.    He declared that to fill an order for Exhibit 1, it would have to be described as a "16-button overseam glace, three pearl clasps, Paris point embroidery." He admitted that the term "embroidery" would not always be used in ordering such gloves.    He then stated that the words "Paris point and embroidery always go together, almost always;" that a Paris point embroidery on the back of a glove is *partly* decorative, but denied that it strengthened or shaped the glove.    What purpose other than a decorative one the Paris point served he did not say. He then asserted that the term "Paris point" *always* refers to embroidery, but why the words "Paris point" and "embroidery" were both used in ordering gloves, he did not explain.    Louis knew of no dress gloves manufactured in this country which were perfectly plain on the back, and said positively that any decoration on the back of. a glove, *no matter how simple,* was a form of embroidery in the glove making industry.    When the attention of the witness was called to the fact that Congress had imposed. a duty of $4.40 per dozen pairs on women's gloves 12 inches in length, and 50 cents per dozen for each inch in excess of that length, and 40 cents per dozen pairs additional when such gloves were *embroidered or embellished,* he admitted that Congress must have contemplated that

there were gloves which were neither embroidered nor embellished. He insisted, however, that a *leather cord effect* was embroidery and when asked why Congress imposed a duty of 40 cents extra on embroidered gloves when the laying of a duty of $4.40 per dozen pairs on all gloves would have achieved the same purpose, he responded that "the workings of the mind of a congressman or senator are strange."

Isaac C. Moses, engaged in the business of selling gloves, testified for the Government that Exhibit 1 was sold in the trade in 1922 as a 16-button glace glove and that such a glove would be ordered as a "Paris point self embroidery;" that the word "self" meant white or black on a white glove, and black on a black glove; that embellishment and embroidery meant exactly the same thing in the trade; that the word "embellished" was not commonly used in the trade; that the Paris point on the glove does not shape or strengthen the glove, but weakens the glove; that no men's or women's dress gloves, plain on the back, were manufactured in this country, and that the only gloves plain on the back of which he was aware, were golf gloves and polo gloves, the latter being without fingers on one hand.

George W. Wolf, a Government examiner of leather gloves, testified for the Government that he had passed in February or March, 1924, chamois gloves used by women for house cleaning and that these gloves had plain backs; that only two or three importations of such chamois gloves came in during the year; that prior to the Tariff Act of 1922 polo and golf gloves, some with plain backs and some without plain backs, were imported.

It is not established by the evidence in the case that the terms "embroidered" and "embellished" have a special meaning in the trade different from their ordinary meaning. We are therefore of the opinion that none of the gloves in issue are definitely, uniformly, and generally known to the trade as embroidered or embellished gloves. We are also satisfied that the term "Paris point," standing alone, does not signify to the trade gloves which are embroidered on the back. If the term "Paris point" *always* meant to the trade a glove embroidered on the back, the use of the word "embroidery" would be wholly unnecessary. The ordering of gloves as "Paris point embroidery" can not be reasonably accounted for except upon the assumption that there are Paris points embroidered and Paris points not embroidered.

The evidence in the case is uncontradicted that there are no dress gloves with plainer backs than those represented by importers' exhibits in this case. It is true that golf, polo, and house-cleaning gloves seldom if ever have any work on the back, but as such gloves are not close fitting gloves, and do not exceed 12 inches in length

and are designed for rough usage, they can hardly be regarded as typifying plainness in dress gloves.

The word "embellish" means to make beautiful or elegant, to beautify or adorn. It therefore signifies the addition to an article of that which is not necessary for its proper completion or usefulness and the creation of a commodity which is recognized by people in general as something more than plain.

Embroidery is made by stitching, but all stitching is not embroidery. If the stitching on the back of the glove is primarily for the purpose of strengthening the glove, or to prevent it from stretching, or for a useful purpose other than ornamentation, it should not be regarded as embroidery or embellishment within the meaning of the paragraph. *United States* v. *Grass Bros.*, 13 Ct. Cust. Appls. 33, T. D. 40866.

The evidence establishes without contradiction that the ladies' dress gloves, here the subject of protest, are the plainest dress gloves made. Nothing has been done to them except to shape them and make them something better than bags for the hand. As there are no plainer dress gloves and as no work has been done on them except that which was necessary for the manufacture of a properly shaped and better fitting glove, the gloves can not well be regarded as embellished. The backs of the gloves are not ornamented with any *needlework* figure, design, or pattern. The Paris point or draw point on the exhibits is a raised effect produced by *creasing the leather,* and the stitch on the back of the glove has no purpose other than that of making the leather creases and of maintaining them in place. The stitches are not fancy and the threads of the stitch produce no thread raised effect and no thread, figure, design, or pattern. As the backs of the gloves are not ornamented with figures, designs, or patterns in needlework, they can not be said to be embroidered.

Whatever of conflict in the testimony there may be, was resolved against the Government by the judgment of the board and that judgment we are unwilling to disturb inasmuch as it is supported, except as to gloves represented by Exhibit 6, by some evidence, and is not against the weight of the evidence.

The judgment of the board is *reversed* as to the gloves represented by Exhibit 6, and in all other respects it is *affirmed.*