KAYSER & CO. (INC.) ET AL. *v.* PEVNY; UNITED STATES IMPLEADED (No. 2560)[1]

1. CONSTRUCTION, PARAGRAPH 1430, TARIFF ACT OF 1922—EMBROIDERIES— EMBROIDERED COTTON GLOVES.

2. EMBROIDERY—FANCY STITCHING ON COTTON GLOVES.

Lines of stitching run around the points on the backs of cotton gloves to accentuate the points, the stitching being in different color from the gloves, not forming any design and not being in relief, are not embroidery. All ornamental stitching is not embroidery.

[1] T. D. 41368.

United States Court of Customs Appeals, February 2, 1926

APPEAL from Board of United States General Appraisers, G. A. 8944 (T. D. 40710)

[Reversed.]

*John R. Rafter* for appellants.
*De Vries, Doherty, Davis & Lamb* (*Thomas J. Doherty* of counsel) for appellee.
*William W. Hoppin*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

[Oral argument October 13, 1925, by Mr. Rafter, Mr. Doherty, and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise, the classification of which is here involved, consists of sueded, warp-knit, cotton fabric gloves, similar to those under consideration in the case of *Kayser & Co.* (*Inc.*) v. *United States*, suit No. 2549, 13 Ct. Cust. Appls. 474, T. D. 41367, which opinion is handed down concurrently herewith.

The two cases were heard in this court as well as before the Board of General Appraisers at different times, but because the same statutes are involved and practically the same issues presented, they have been considered together in this court and treated as companion cases.

The question in each is whether the gloves are classifiable under paragraph 915 of the Tariff Act of 1922 or under paragraph 1430 thereof. They were classified by the collector under the former.

The appellee, an American producer of cotton gloves, proceeding under the provisions of section 516 of the act, claims classification under the latter paragraph. The Board of General Appraisers sustained the claim.

The important question is whether or not the gloves are embroidered and as such classifiable under paragraph 1430. If not embroidered they fall within the provisions of paragraph 915 as held by the collector.

These paragraphs are not quoted here because they are sufficiently set forth in the opinion in the companion case.

At the outset, therefore, it is important to know the difference between the ornamentation on the backs of the gloves that is claimed to be embroidery in this case, and the ornamentation that is held to be embroidery in the companion case.

In that case there were on the backs of the gloves represented by the typical exhibits numbered from 1 to 9, inclusive, three groups of thread effects in relief; that is, superimposed, raised above the fabric of the glove. These raised effects are known as points and each is composed of from four to six lines of stitches. The stitches them-

selves are ornamental and on all but two of the exhibits the threads used are of two or more colors and each of such points is markedly elevated above the fabric of the glove. Exhibits 8 and 9 in addition. have three ornamental stitched designs upon the gauntlet of the glove. There are no raised or ribbed effects produced by crimping or creasing the glove fabric on any of these exhibits.

In the case at bar there are on the backs of each of the typical exhibits numbered 1, 2, 3, and 4, ribbed or raised effects in relief, three in number on each glove, which are known as points, extending backward from the glove fingers, but there are no points composed of stitches. On Exhibits 1, 2, and 3 these points are produced by crimping or creasing the glove fabric and sewing it together with a plain stitch. The points thus produced are raised markedly above the fabric of the glove. On Exhibit 4 each point consists of three ribbed effects close together produced in the same manner. On Exhibit 1 there are two lines of stitches close to, parallel with, and on each side of each point passing around the end thereof that is nearest to the fingers of the glove. On Exhibits 2 and 3 there is one such line but on Exhibit 3 it does not pass around the ends of the points. Each of the points on Exhibits 1, 2, and 3 is known as spear point, the ends of which farthest from the glove fingers are made to simulate the point of a spear by short creases in the glove fabric uniting with and projecting at an acute angle from each point. The points on Exhibit 4 are known as draw points, but there are no threads or stitches between or around the same. There is no ornamental stitching on the gauntlets of these exhibits.

In other words, restated with as much definiteness as possible, the points in suit No. 2549 are composed of four or more lines of stitches, ornamental in character, and raised markedly above the fabric of the glove, with no stitches plain or otherwise, between the points, while in this case, the ribbed or raised effects which constitute the points, are composed of the glove fabric creased and stitched together to hold it in place. These points are also markedly raised above the fabric. On Exhibits 1, 2, and 3 there are one or two lines of stitches close to and parallel with such points, some of which extend around the ends of the points. Exhibit 4 has no such stitching. None of these stitches appear to be like the ornamental stitches which constitute the points in the companion case and do not produce any raised effects on the fabric of the glove.

As already appears, the gloves involved in the companion case were held to be embroidered, and we advance to the question whether those here under consideration are or are not embroidered within the meaning of paragraph 1430.

At the outset the importer contends here, as in the other case, that in view of the fact which is established by the evidence, that

these gloves are, and for a long time have been, made with similar points, and are not considered as finished without such points, it must be held, in view of the explicit provisions of paragraph 915, that Congress intended the gloves here to be classifiable thereunder.

But that contention has been disposed of adversely to importer in the companion case because of the exceedingly comprehensive, sweeping, as well as precise and definite (indeed meticulous) language of paragraph 1430, covering all fabrics and articles composed of such materials as these gloves, embroidered in any manner, finished or unfinished, by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in the act.

The intent of Congress must be deduced from the language employed and in view of the provisions of paragraph 1430, it must be held that it was thereby intended to draw within its provisions embroidered cotton gloves which, if not embroidered, would be classifiable under paragraph 915.

It remains to determine whether or not these gloves are embroidered.

Little assistance on this issue can be derived from the provisions for cotton fabric gloves in previous tariff acts. Gloves stitched or embroidered with more than three strands or cords were provided for in the acts of 1897 and 1909. Much litigation arose under these provisions, so far as leather gloves were concerned, but the question of what was embroidery was not determined therein.

Paragraph 1433 of the present act provides for cumulative duties on leather gloves "when embroidered or embellished." That provision has been considered by this court in *United States* v. *Grass Bros.*, 13 Ct. Cust. Appls. 33, T. D. 40866, and in *Mayer & Co.* v. *United States*, 13 Ct. Cust. Appls. 390, T. D. 41321.

In the case at bar, while there was some evidence tending to show a commercial meaning of the word "embroidery," we understand the board did not hold, and that it is not claimed in this court that any commercial meaning has been established.

In Webster's New International Dictionary "embroidery" is defined as "needlework used to enrich textile fabrics, leather, etc."

In *Sloane* v. *United States*, 7 Ct. Cust. Appls. 463, T. D. 37049, we held that—

Embroidery signifies a form of ornamental work produced by the needle on a completed textile or other existing surface and necessarily implies the ornamentation and not the creation of the textile or other surface which it is designed to embellish.

In *United States* v. *Field*, 10 Ct. Cust. Appls. 183, T. D. 38550, the views expressed in the Sloane case were affirmed and it was said at page 190 that—

To constitute an embroidery there must be, by needlework processes, an ornamental addition superimposed upon a previously completed fabric or article.

In this connection see *United States* v. *Waentig*, 168 Fed. 570, affirmed in 174 Fed. 1023.

Perhaps one of the most informing opinions on the question of what is embroidery may be found in T. D. 26853, G. A. 6205, in which the following language is found:

And while it may be true that certain stitches when combined in numbers in pursuance of a design result in such an ornamentation as might properly be characterized embroidery, nevertheless, one or a number of the same stitches standing alone or devoted to some other purpose  *  *  *  would not of necessity result in the production of that which may properly be termed embroidery. So that it would appear to us that in the determination of that which is and that which is not embroidery we must of necessity be guided by the effects produced in the particular case, the design which is produced by the work in question, and its effect upon the eye as to whether or not ornamental in pursuance of a design rather than by the character of the machinery used or the nature of the stitch employed.

Keeping these definitions in mind we first consider the typical Exhibits 1, 2, and 3 in connection with the evidence. From the record it is apparent that nearly all gloves of this character are made with points of some kind, the points themselves consisting of raised effects composed either of lines of stitches, as in the companion case, or of the fabric itself creased and ribbed, as in this case; that such points are embellishments and that they tend to make a better fitting glove, but the points here are not embroidery. It is not denied that the only purpose of the stitches alongside the points on the gloves here is decorative and, therefore, the precise question before us is, do these stitches constitute embroidery?

Mr. Smith, a well qualified witness, called by appellee, said that he rarely saw cotton fabric gloves without points; that as a selling article such gloves would not be complete without them.

His views are further set forth in the following questions and answers:

Q. Does that stitching or embellishment on the back serve any other purpose than as sort of decoration or ornamentation?—A. No; it completes the glove, and you can ornament it all you like with different ornamentations or embroideries.

Q. You have seen various styles of ornamentation on the back of gloves other than points, have you not?—A. Well, points and embroideries are used synonomously; they are virtually the same thing, only points are used more by manufacturers and importers, and the buyers of the gloves designate them as embroidery.

Q. The points do not make the glove fit any better, do they?—A. No.

Q. You could remove them without destroying the integrity of the glove itself?—A. Yes, sir; you could, but the glove on the hand, if you ripped out the embroidery on the back it would have a tendency perhaps to make it a little looser across the back; the fabric naturally might give a little more.

Summed up, the other testimony in the record, which is not contradicted, is of substantially the same import. Some witnesses expressed the opinion that the stitches alongside the points on Exhibits 1, 2, and 3 were embroidery and others went no further than to say that they were decorative or ornamental.

From all the testimony we are impressed with the view that the witnesses had in mind, as did Mr. Smith, that points and embroideries were used synonymously and that in saying the stitches between the points were embroideries in fact, it was difficult for them to disassociate the stitches from the points themselves because of the fact that the pronounced ornamental effect resides in the points accentuated somewhat by the stitches.

It is obvious that there is no figure, pattern, or design superimposed upon the glove fabric by these stitches. No raised effect is produced other than what naturally follows from the use of one or two small threads stitched through the fabric. This can not be regarded as any superimposure thereon. No ornamental effect in relief is produced thereby. It is true that the color of the thread employed in making these stitches differs somewhat from the color of the glove fabric but that alone does not constitute embroidery. To hold that these stitches are embroidery would require the conclusion that any single line of stitches, however small the thread, if visible to the naked eye, provided it served no utilitarian purpose, would be embroidery, because it would seem that unless utilitarian its only purpose would be for ornamentation.

Although some witnesses have said that these stitches are embroidery, that is but the expression of their opinion and not controlling upon us, and although it is conceded that the stitches are decorative, it is for us, on appeal, to say whether or not they are embroidery.

Compared with the lines of stitches on the exhibits in the companion case, the ornamental effect of those here is so dwarfed as to be insignificant and we can not agree with the board that the ornamentation produced by the stitches in the two cases is substantially similar.

We are of opinion that the lines of stitches on Exhibits 1, 2, and 3 do not rise to the dignity of embroidery. Regarded apart from the points they hardly enrich the gloves. Their purpose, manifestly, is, as one of appellee's witnesses testified, in effect, "to set off" the points. On none of the many gloves shown in the two cases do we find any glove which has any line of stitching on the back, such as on these here, unless there are also points otherwise produced.

It was easy for Congress to have declared that *any* stitching not necessary to complete an article should constitute an embroidery, but it did not, and we are of opinion that it did not intend that such stitching as appears on these three exhibits would require them to be classified as embroidered under paragraph 1430.

As to Exhibit 4, Mr. Crocheron, a witness for appellee, testified that there was no purely ornamental stitching thereon, and there was no evidence to the contrary.

The appellee concedes that the stitches thereon are both ornamental and useful, and we think their ornamental purpose is so slight that they can not be regarded as embroidery. Illustrative Exhibit (B), which is before us, is representative of one type of gloves covered by the protest. The only ornamentation on the backs of these gloves consists of plain spear points with no line of stitches between or around the points. The protest as to these gloves was abandoned. We are unable to discover how one could be said to be embroidered and the other not, and are clear that the gloves represented by Exhibit 4 are not embroidered.

The Board of General Appraisers did not in its opinion consider whether or not there was any distinction between Exhibit 4 and the others. It did not discuss in any detail any of the exhibits in this case but referred to its opinion in suit No. 2549, saying:

A very careful examination of the present record convinces us that there is no material difference between the issues there and here presented   *   *   *.

Thereupon it adjudged that all the gloves, except those concerning which the protest was abandoned, were dutiable as claimed by appellee.

But we think, for the reasons hereinbefore set forth, that a different conclusion should have been reached.

The gloves in this case were properly classified by the collector and the judgment below as to all the gloves held classifiable under paragraph 1430 is *reversed.*