(C. D. 1254)

HENRI BENDEL, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 20, 1950)

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Arthur R. Martoccia*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The suit listed above presents for our determination the question of the proper classification of certain imported merchandise which was classified as embroidered corsets, and duty was levied thereon at the rate of 75 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified by the trade

agreement with France, T. D. 48316. Claim is made in the protest that said merchandise is properly dutiable at only 55 per centum ad valorem under paragraph 1529 (c) of said act and the aforesaid trade agreement.

It was agreed between counsel at the trial that "if this is an embroidered article or if this stitching is embroidery, * * * it is dutiable as assessed at 75 per cent, and if it is not, it is dutiable at 55 per cent as claimed in the protest as a corset or girdle or body supporting garment." Counsel for the plaintiff also limited the claim in the protest to item 2249/13, as shown on the invoice.

An official sample of the involved merchandise was admitted in evidence as exhibit 1. There was also admitted in evidence as illustrative exhibit 2, a scarf, the monogram on which represents certain letters or initials. We also have as a part of the record before us the testimony of five witnesses, three of whom testified for the plaintiff and two for the defendant.

Exhibit 1 consists of a girdle, apparently of ordinary dimensions, measuring 11 inches from top to bottom in front, 13 inches from top to bottom on the sides, and 12 inches from top to bottom in the back. To the front portion of the girdle is attached by ordinary stitches, around the edge thereof, that which is referred to as a "panel," and which one witness stated was composed of satin and silk. This panel extends from the top to the bottom of the girdle. At the top this panel measures 3½ inches in width. It then extends downward and outward, so that 1 inch from the top it measures 5½ inches in width. The two sides then extend straight downward for a distance of approximately 1 inch. The two sides then taper in and extend downward so that 3 inches from the top the width of the panel is reduced to 3 inches. The sides then extend outward and downward, so that 4½ inches from the top, the panel measures 6½ inches in width. From this point, the two sides converge to a point at the bottom of the girdle, so that the panel as a whole resembles somewhat the shape of a closed parasol with a large knob on the end of the handle.

Upon the panel of exhibit 1 appear certain lines or rows of stitching which, according to the record, were placed thereon prior to the attachment of the panel to the rubber foundation. These are the stitches which it is contended by defendant constitute embroidery, and which the plaintiff contends are purely utilitarian and therefore not embroidery.

Regarding the purpose of these additional stitches appearing on the panel, one of plaintiff's witnesses stated:

. . Most girdles have to have a basic functional purpose, and that is to hold a woman's stomach in if she wants to be flat; * * * she don't care whether she has a roll up above, she wants primarily a flat front. I don't know what law of science it is when you have a pressure, it is mostly in the front. It will stretch

the material horizontally and make it back out, or whatever you want to say, and this stitching reinforces the material and keeps it from stretching horizontally for most of it is on the bias, or on a vertical line.

*  *  *  *  *  *  *

The purpose of the panel over the elastic is to keep the stomach of the woman flat, just as much as the stitching keeps the material from stretching horizontally.

This witness also testified that these additional stitches on the panel and the stitches around the edge of the panel which hold the panel to the elastic material underneath, are the same; that it was just one row of stitches, but when it was pointed out by the court that these additional stitches "are double instead of single" counsel for plaintiff inquired of the witness "Why is it that it is double?" and the witness replied that "It just reinforces the material that much more." However, when this witness was later interrogated regarding the two sets of stitches, she stated: "It is exactly the same stitch as is around the edge of the panel."

It is apparent from this record that the court, during the trial, was definitely of the opinion that the two sets of stitches were not the same and it is equally apparent that counsel for the plaintiff was of the same opinion. An examination of the sample before us shows definitely that the two sets of stitches are not the same. The stitches around the edge of the panel appear to be ordinary single thread machine stitches, while the stitches in the center of the panel are double thread chain stitches.

MR. BROOKS: Will your Honor distinguish there are the two stitches?

JUDGE RAO: If you will notice, Mr. Brooks, going across this reinforcement, which the Government claims is embroidery and what you claim is stitching, they are double instead of single.

One of plaintiff's witnesses admitted under cross-examination that these additional stitches did constitute a geometric design which was rhythmic, although insisting that these additional stitches were purely utilitarian and were not ornamental. In fact, each of plaintiff's witnesses insisted that these additional stitches were solely for utilitarian purposes and were not ornamental in character. Defendant's two witnesses testified that these additional stitches served no utilitarian purpose, were ornamental in character, and added to the attractiveness and salability of the girdle.

Another of plaintiff's witnesses testified that the purpose of the chain stitch "on Exhibit 1 is fundamental stitch, is to make the panel, to reinforce the panel, and to reinforce the stomach support"; that "if those stitches were not on Exhibit 1, on the panel * * * this satin would bulge" and if it bulges "It is not so good." On cross-examination this witness testified that he made garments similar to exhibit 1 without the stitching on the panel; that 35 per centum of the garments he makes are without the stitching on the panel; and that his volume of business per year amounted to about $75,000.

The witness also testified that the stitching on the panel of exhibit 1 was not superimposed upon a previously completed article:

Because this stitching is put on before, I suppose this is how—as I see it, anyhow, you couldn't possibly stitch through the material and the elastic. It would break the thread, the needle of the machine would break the rubber and then, of course, it wouldn't wear as well; before the girdle is all put together, the panel is first stitched.

The witness further stated that it was not advisable to stitch the panel through the satin and rubber "Because no more than the needle is put through the rubber it breaks the rubber and it becomes weak." One of plaintiff's witnesses also testified that embroidery stitching "really can be both" functional and utilitarian and very pretty and ornamental.

One of defendant's witnesses testified that these stitches in the center of the panel serve solely for ornamental purposes, to enhance the garment for selling purposes, because the actual stitches cannot serve to reinforce the garment at all; that the boning is what reinforces the garment; that these threads in the center are superimposed upon the panel according to a predetermined design; that the stitching on the inside and outer center of the panel would not have anything to do with the body support of the garment; that this panel prevents the elastic from stretching, and that he could not see where these threads that go across would reinforce the panel or add strength to it; that the panel itself keeps the stomach in. The witness testified further as follows:

X Q. Is it your considered opinion that the stitching on that panel in Exhibit 1 does not reinforce the fabric in Exhibit 1, that is, in the panel of Exhibit 1?— A. It doesn't help the fabric one bit.

X Q. Without those stitches that appear on the panel, * * * is it your considered opinion that the panel would stretch just as much as if those stitches were not present?—A. Yes.

*       *       *       *       *       *       *

A. The fabric can't stretch because there is no stretchability to this fabric.

*       *       *       *       *       *       *

X Q. And if a woman is wearing the garment with a panel such as the silk panel, such as in Exhibit 1, without any stitching whatsoever through the surface of it, it would give just as much whether it had any stitching on it?—A. It doesn't make a particle of difference.

JUDGE LAWRENCE: Apparently, with the stitching on it, however, it maintains its shape better?

THE WITNESS: It doesn't make any difference. You could put any design on there and it wouldn't have any effect on the garment. It is purely ornamental. You take that stitching which you say reinforces the satin there, you put that to the testing machine after the stitching on there, you probably will weaken the strength because it has all the little holes in there.

The second witness for the defendant stated, after giving certain qualifications as to the term "embroidery," that in his opinion, the

chain stitch on exhibit 1 was embroidery; that it is ornamental and is above the surface; that he could not see how this chain stitching enforces or reinforces the panel; and that embroidery usually weakens a fabric, naturally, because the needle piercing the fabric has a tendency to weaken it.

Considerable testimony was offered in this case as to the nature of the stitches appearing on the panel of exhibit 1, and also the nature and designation of the machine used to produce such stitches. It appears that this same question was present in the case of *Charles F. Waentig* v. *United States*, 10 Treas. Dec. 538, T. D. 26853, G. A. 6205. In answering the question presented, this court said:

Much testimony has been adduced in this and other cases as to the nature of the stitches employed and the designation of the machinery which makes the stitch. It would seem to us that no one of these factors concludes the question as to whether or not the result produced is embroidery. While it may be true that the operation of certain machinery styled embroidery machinery can result in nothing other than the execution of some design, yet it does not follow that the same design or other designs equally within the category of embroidery can not be worked by other machines known by some other designation. And while it may be true that certain stitches, when combined in numbers in pursuance of a design, result in such an ornamentation as might properly be characterized embroidery, nevertheless one or a number of the same stitches standing alone, or devoted to some other purpose, such as the construction of a button hole or the uniting of fabrics, * * * would not of necessity result in the production of that which may properly be termed embroidery. So that it would appear to us that in the determination of that which is and that which is not embroidery we must of necessity be guided by the effects produced in the particular case, the design which is produced by the work in question, and its effect upon the eye as to whether or not ornamental in pursuance of a design, rather than by the character of the machinery used or the nature of the stitch employed.

The above decision was affirmed in *United States* v. *Waentig*, 168 Fed. 570.

Based upon this record, counsel for plaintiff contends in his brief filed herein, that the chain stitches found on the panel of exhibit 1 do not constitute embroidery, and cites in support of this contention the cases of *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550; *B. Altman & Co.* v. *United States*, 34 Treas. Dec. 206, T. D. 37559, G. A. 8143; *Simpson* v. *United States*, 3 Ct. Cust. Appls. 263, T. D. 32569; and *Kayser & Co. (Inc.)* v. *Pevny*, 13 Ct. Cust. Appls. 479, T. D. 41368. Counsel for defendant contends that the said chain stitches do constitute embroidery, and cites in support of such contention the cases of *United States* v. *Field & Co.*, *supra*; *United States* v. *Florea & Co., Inc.*, 25 C. C. P. A. (Customs) 292, T. D. 49396, and on the question of a sample being a potent witness there is cited *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995; *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029.

In the *Altman* case, *supra*, the court found that the stitching appeared to be necessary for the purpose of completing the corset, and not for the purpose of ornamenting it, and therefore held the corsets were not embroidered. In the present case the facts are entirely different. One witness in this case testified that he manufactured each year substantial quantities of girdles with panels similar to those here involved, and upon which panels no additional stitching was done. No one suggests that such girdles were not complete girdles, or that they did not perform all the functions of an ordinary girdle. It is therefore clear that the additional chain stitching on the center part of the panel of exhibit 1 herein was not necessary to complete the girdle. This conclusion finds support in the testimony of plaintiff's witness to the effect that if those stitches were not on the panel of exhibit 1, this satin would bulge, and if it bulges, it would not be so good.

In determining whether or not the additional stitching on the panel of exhibit 1 is embroidery, we are not primarily concerned with the question of whether such stitching makes the girdle a better girdle, but our sole concern is whether or not such stitching answers the definition of "embroidery," given by the lexicographers, and as announced by the courts. If such stitching does meet the definition of "embroidery," the article of which it forms a part is an embroidered article, or an article in part of embroidery, and this is true whether the article upon which such stitching appears is or is not a better article. The definition of embroidery does not embrace the factor of whether the article upon which it appears is or is not a better article.

We cannot agree with the contention of counsel for the plaintiff that the chain stitching on the panel of exhibit 1 is purely functional or utilitarian. One of plaintiff's own witnesses testified that each year he manufactures large numbers of girdles with panels like that on exhibit 1 upon which panel no stitching whatever was placed. It is not to be assumed that a manufacturer would produce some $25,000 worth of girdles each year which were not serviceable or could not be used as girdles because he had deliberately omitted from the panel portion thereof certain chain stitches. One of defendant's witnesses also testified regarding this panel without the additional chain stitches that "The fabric can't stretch because there is no stretchability to this fabric." This latter testimony is confirmed by an examination of the sample before us. Based upon this record, we are not able to hold that the chain stitching on the panel of exhibit 1 is purely functional or utilitarian. The record, as a whole, supports a finding that this chain stitching is primarily decorative and ornamental.

Nor can we agree with the contention of counsel for the plaintiff that because such stitching serves a functional or utilitarian purpose that it therefore cannot be considered as embroidery. Our appellate court held otherwise in *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls., 474, T. D. 41367. On this point, the following is quoted from that decision:

> The points on the backs of all of the exhibits and the forms or figures on the wristlets of Exhibits 8 and 9 are made up of threads put in place by the needle and are unquestionably decorative and ornamental needlework designs. The points, forms, and figures are therefore embroidery and the gloves bearing them are embroidered gloves. Counsel for the appellant argues, however, that the gloves are not embroidered for the reason that no gloves are made without decorative stitching on the back and for the further reason that points are necessary for the proper completion of fabric gloves.

> We do not think that that position is tenable inasmuch as there are illustrative exhibits in evidence which have no raised thread effects on the back. It is apparent from an examination of these exhibits that by creasing or crimping the fabric and by stitching on each side of the points thus produced, gloves may be shaped, made and held to their form without embroidering points on the backs. True enough points made by creasing the fabric are not so pleasing as raised effects made of threads, but the crimped or creased points accomplish the *utilitarian* purpose desired just as effectively as ornamental or decorative needlework. As properly shaped and fitting gloves may be completed without using embroidered points, it follows that such embroidery work is not indispensable for the making of finished gloves. [Italics quoted.]

It appears to us that the above holding of our appellate court renders unsound and untenable the contention of counsel for the plaintiff set out above.

In the *Field* case, *supra*, the merchandise consisted of woven flax canvasses and colored woolen yarns, the canvasses having been stitched by hand with the yarns sufficiently to indicate a preconceived ornamental design and color scheme, and the nature of the needlework, which, when finished, the court found would be tapestry in common understanding. Since the court found that the imported merchandise was mere materials to be used in the production of tapestry, it refused to hold the same to be embroidery, or articles or fabrics in part of embroidery. The factual situation in the *Field* case, *supra*, clearly distinguishes that case from the present case, and renders inapplicable herein any pronouncement by the court regarding embroidery. In the present case, no one suggests that any portion of the involved merchandise consists of mere materials.

By reference to *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550, we find the following definition of "embroidery" by our appellate court:

> To constitute an embroidery there must be, by needlework processes, an ornamental addition superimposed upon a previously completed fabric or article.

Also, in *United States* v. *Waentig*, 168 Fed. 570, the Circuit Court for the Southern District of New York stated:

* * * The fundamental idea of embroidery seems to be that it is needle-work done upon a previously completed fabric, as distinguished from tapestry or lacework, in which the design is a part of the original fabric, and the idea that it shall be ornamental also seems to be essential to the definition.

Webster's New International Dictionary, 1949, defines "chain stitch" as follows:

a. An ornamental stitch like the links of a chain, used in crocheting, sewing, and embroidery; also, work so made; chainwork.

In the New International Encyclopaedia, under the caption "The Process of Embroidery," it is stated:

The tools of the embroiderer are the simplest, consisting of needles to draw the different kinds and sizes of thread through the work, a frame in which to hold the material * * *, and scissors to cut the thread. A stitch is the thread left on the surface of the cloth after each ply of the needle. The most common forms of canvas stitch, with the needle passing through the interstices of warp and weft of the canvas, are cross stitch, tent stitch, Gobelin stitch, Irish stitch, plait stitch. Crewel stitch is a diagonal stitch used in outlining. Some of the other principal stitches are *chain* or *tambour*, herringbone * * * buttonhole, feather, rope, of which the French knot is a complicated form, satin, long and short, darning, and running stitch. [Italics ours.]

Also, in an Encyclopaedia of Needlework, by Theresa de Dillmont, under the caption "Chain Stitch" the following appears:

Generally speaking, this stitch is only used for the adornment of under-linen or small articles of fancy-work but it can also be employed in copying cross stitch patterns. In old collections we often meet with very interesting pieces of needle-work, which were used for hangings or screens, where the figure-subjects, are executed in chain stitch. Patterns in many colours, gain immensely by being worked in this stitch, the colours blend together better than in any other, and even the shape of the stitch contributes to soften the contrasts of colour.

Chain stitch cannot, like other stitches, be worked to and fro, nor can all the stitches of one row be finished first, as is generally possible in cross stitch work, each row must be begun separately, and always from the same side, and a different needle should be used for each colour, as the material has often to be changed.

In view of the foregoing, it would not appear to be open to question that the chain stitch is ornamental in character, and also that it is a definitely recognized embroidery stitch.

The merchandise involved in *United States* v. *Florea & Co.*, 25 C. C. P. A. (Customs) 292, T. D. 49396, was described by our appellate court as follows:

The gloves at bar are wool knit gloves made in various colors. Collective Exhibit 1, which consists of eighteen gloves, was received in evidence as representa-tive of the importation involved. Seventeen of the items in the exhibit are quite similar, in respects with which we are here concerned, and one of the items, to which reference will later herein be made, differs from the other seventeen so as to require a separate description. Each of the seventeen items contains stripes

running crosswise of the glove, which stripes are in various colors. On the back of each of seventeen of the gloves, after they were finished in Japan, small figures or characters were stitched. In most instances the stitching is placed between the stripes, and the woolen threads with which the figures are made differ from each other in color and contrast in color with the predominant color of the gloves. Generally speaking, the characters of the seventeen gloves consist of from two to eight superimposed stitches, which stitches usually touch and, to some extent, overlap each other and show on the surface of the glove for a distance of about one-sixth of an inch. The glove above referred to which differs from the other seventeen is of solid green color, on the back of which are four superimposed bars of the same color as the glove. The bars are about three-quarters of an inch long and have the appearance of having their ends only fastened to the glove. They stand out in relief in rather an unusual degree and each has the appearance of being composed of a considerable amount of yarn wrapped around a center yarn thread. It seems obvious that these bars were not put upon the glove to lend color as is true in all the other items in the exhibit. They do, however, ornament and embellish the glove. * * *

In holding these gloves to be embroidered, our appellate court employed the following language:

It seems clear to us that when we apply the above-stated definitions, found in the various authorities and in the pronouncements of the courts on the subject of embroidery, it must necessarily be concluded that in each of the eighteen gloves forming Collective Exhibit 1, the ornamental, superimposed threads here in controversy constitute such needlework by stitching as to respond to the term "embroidery." That it is superimposed cannot be questioned. The stitches are arranged systematically in accordance with a predetermined design, are on top of the knitted yarns of the glove, and have a raised or relief appearance. * * *

An examination of the panel portion of exhibit 1 shows that the stitches in the center portion thereof are composed of two threads, which the evidence shows to be a chain stitch, which stitches usually touch and, to some extent, overlap each other, and definitely show a raised effect. These stitches also ornament, embellish, and decorate the panel.

An examination and comparison of the chain stitches on the panel of exhibit 1 herein with the stitches on the gloves in the *Florea* case, *supra*, is convincing that the stitches on the panel of exhibit 1 are equally as ornamental and decorative as the stitches on the gloves in the *Florea* case which our appellate court held to be embroidery. It is true that the thread used to produce the embroidery on the gloves in the *Florea* case was of a different color from the body of the gloves in all of the exhibits except one. However, in one glove the thread used to produce the embroidery is of the identical color as the thread in the body of the glove.

In cases such as this, the sample is often a very potent witness. *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995; *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; and *United States* v. *Bernard, Judae. & Co.*, 18 C. C. P. A. (Customs), 68, T. D. 44029.

It will be observed that some of the witnesses testified that if these chain stitches appearing in the center portion of the panel of exhibit 1 had passed through the elastic fabric beneath, the needle would have cut the rubber and thereby destroyed the usefulness of the girdle. Whether or not this is true, is not of particular importance in this case, but it will be seen from an examination of the girdle that the stitches around the edge of the panel which serve to hold the panel in place upon the elastic base did pass through the elastic fabric, and there is no indication that in making such stitches the needle destroyed or in any manner damaged the rubber in the girdle.

JUDGE LAWRENCE: And those are the only stitches, are they, which penetrate the basic fabric?

THE WITNESS: Yes.

JUDGE LAWRENCE: That is around the outer edge?

THE WITNESS: Yes.

The chain stitch in question on the panel of exhibit 1, it seems to us, falls clearly within the definition of "embroidery," as adopted by the courts. Regardless of the character of the machine used, or the nature of the stitch employed, that the forms, figures, or designs on the panel of exhibit 1 are produced by means of needle and thread upon an otherwise completed fabric or article, is clearly established by the record. An inspection and examination of the sample in evidence is sufficient to demonstrate, even to the lay eye, that these forms, figures, or designs are ornamental and decorative.

Therefore, on the record presented, following the authorities cited and quoted, and for the reasons stated herein, we hold the involved merchandise to be embroidered. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.